# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

JAMES HENRY GREEN,

    *Petitioner*,

3:11-cv-00161-HDM-VPC

vs.

ORDER

ELDON K. MCDANIEL, *et al.*,

    *Respondents*.

This habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents' motion (#22) to dismiss, which was filed in conjunction with the answer pursuant to the scheduling order, and for a final decision.

### Background

Petitioner James Henry Green challenges his 2008 Nevada state conviction, pursuant to a jury verdict, of battery with the use of a deadly weapon.  He challenged the judgment of conviction in the state courts on direct appeal and state post-conviction review.

### Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).  Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that a decision was incorrect.  131 S.Ct. at 1411.  Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the

1     decision: (1) was either contrary to or involved an unreasonable application of clearly
2     established law as determined by the United States Supreme Court based on the record
3     presented to the state courts; or (2) was based on an unreasonable determination of the facts
4     in light of the evidence presented at the state court proceeding.  131 S.Ct. at 1398-1401.

5        A state court decision on the merits is "contrary to" law clearly established by the
6     Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme
7     Court case law or if the decision confronts a set of facts that are materially indistinguishable
8     from a Supreme Court decision and nevertheless arrives at a different result.  *E.g.*, *Mitchell*
9     *v. Esparza*, 540 U.S. 12, 15-16 (2003).  A decision is not contrary to established federal law
10    merely because it does not cite the Supreme Court's opinions.  *Id.*  Indeed, the Court has held
11    that a state court need not even be aware of its precedents, so long as neither the reasoning
12    nor the result of its decision contradicts them.  *Id.*  Moreover, "[a] federal court may not
13    overrule a state court for simply holding a view different from its own, when the precedent
14    from [the Supreme] Court is, at best, ambiguous."  540 U.S. at 16.  For, at bottom, a decision
15    that does not conflict with the reasoning or holdings of Supreme Court precedent is not
16    contrary to clearly established federal law.

17       A state court decision constitutes an "unreasonable application" of clearly established
18    federal law only if it is demonstrated that the state court's application of Supreme Court
19    precedent to the facts of the case was not only incorrect but "objectively unreasonable."  *E.g.,*
20    *Mitchell*, 540 U.S. at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

21       To the extent that the state court's factual findings are challenged, the "unreasonable
22    determination of fact" clause of Section 2254(d)(2) controls on federal habeas review.  *E.g.,*
23    *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).  This clause requires that the federal
24    courts "must be particularly deferential" to state court factual determinations.  *Id*.  The
25    governing standard is not satisfied by a showing merely that the state court finding was
26    "clearly erroneous."  393 F.3d at 973.  Rather,  AEDPA requires substantially more deference
27    to the state court's determination:

28

. . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Pinholster*, 131 S.Ct. at 1398.

### Discussion

### Ground 1: Effective Assistance of Counsel – Failure to Seek Recusal of Trial Judge

In Ground 1, petitioner alleges that he was denied effective assistance of trial counsel when counsel did not seek recusal of the trial judge for alleged bias and prejudice. Green alleges that the judge showed alleged bias toward him when he made various rulings against Green's position in prior cases which petitioner maintains were erroneous. He alleges that he filed a proper person motion to disqualify the trial judge. See #18, at 3.

The state supreme court denied the claim presented to that court on the following basis:

. . . [A]ppellant claimed that trial counsel was ineffective for failing to file a motion to disqualify Judge Bell. Appellant failed to demonstrate that counsel was deficient or that he was prejudiced. Beyond his own blanket assertions, appellant presented no facts to demonstrate why Judge Bell was not competent to preside over his trial. Id. The fact that defendant had appeared before Judge Bell in previous matters did not warrant disqualification. See NRS 1.230. Therefore, the district court did not err in denying this claim.

#23, Ex. 25, at 2.

The Court is not persuaded that Ground 1 is unexhausted. To the extent, *arguendo*, that petitioner presents additional factual specifics that were not presented to the state supreme court, the additional allegations do not fundamentally alter the claim. As discussed below, the claim as articulated in both state and federal court is without merit.

1    The state supreme court's rejection of the claim was neither contrary to nor an
2    unreasonable application of clearly established federal law.

3    On a claim of ineffective assistance of counsel, a petitioner must satisfy the
4    two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984). He must demonstrate
5    that: (1) counsel's performance fell below an objective standard of reasonableness; and (2)
6    counsel's defective performance caused actual prejudice. On the performance prong, the
7    issue is not what counsel might have done differently but rather is whether counsel's
8    decisions were reasonable from his perspective at the time. The court starts from a strong
9    presumption that counsel's conduct fell within the wide range of reasonable conduct. On the
10   prejudice prong, the petitioner must demonstrate a reasonable probability that, but for
11   counsel's unprofessional errors, the result of the proceeding would have been different. *E.g.,*
12   *Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

13   While surmounting *Strickland*'s high bar is "never an easy task," federal habeas review
14   is "doubly deferential" in a case governed by AEDPA. In such cases, the reviewing court
15   must take a "highly deferential" look at counsel's performance through the also "highly
16   deferential" lens of § 2254(d). *Pinholster*, 131 S.Ct. at 1403 & 1410.

17   In the present case, *inter alia*, it clearly was not deficient performance – particularly
18   under the foregoing deferential review standard – for counsel to fail to seek recusal of the
19   state trial judge on the basis that the judge allegedly was biased against Green because he
20   had ruled against him allegedly erroneously on issues in prior cases. The state supreme
21   court's holding on the underlying substantive issue that such allegations did not provide a
22   basis for disqualification of the trial judge under Nevada state law is binding in this Court. The
23   Supreme Court of Nevada is the final arbiter of Nevada state law. Moreover, it is established
24   law as well in federal court that a litigant's dissatisfaction with a judge's prior adverse rulings
25   against the litigant do not provide a basis for disqualification of the judge. *See, e.g., United*
26   *States v. Studley*, 783 F.2d 934, 939-40 (9th Cir. 1986). *A fortiorori*, there was not a
27   reasonable probability of a different outcome in petitioner's trial proceedings but for counsel's
28   failure to pursue such a baseless challenge.

1       The state supreme court's rejection of this claim accordingly was not an objectively
2  unreasonable application of *Strickland* or other clearly established federal law.

3       Ground 1 therefore does not provide a basis for federal habeas relief.

4  **   Ground 2: Commitment Order**

5       In Ground 2, petitioner alleges that he was denied rights to due process and a fair trial
6  in violation of the Fourteenth Amendment when the state trial court issued an allegedly
7  defective order of commitment of petitioner to a state psychiatric hospital.  He alleges that the
8  true purpose of the resulting delay was to give the State more time to file additional charges
9  against him.

10       The Court is not persuaded that the constitutional claim is unexhausted.  The state
11  supreme court held that the corresponding substantive claims presented on state post-
12  conviction review were procedurally barred under N.R.S. 34.810(1)(b) because they could
13  have been raised on direct appeal but were not. #23, Ex. 25, at 3-4.

14       Under the procedural default doctrine, federal review of a habeas claim may be barred
15  if the state courts rejected the claim on an independent and adequate state law ground due
16  to a procedural default by the petitioner.  Review of a defaulted claim will be barred even if
17  the state court also rejected the claim on the merits in the same decision.  Federal habeas
18  review will be barred on claims rejected on an independent and adequate state law ground
19  unless the petitioner can demonstrate either: (a) cause for the procedural default and actual
20  prejudice from the alleged violation of federal law; or (b) that a fundamental miscarriage of
21  justice will result in the absence of review based upon a showing, in a noncapital case, of
22  actual innocence.  *See, e.g.,Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

23       To demonstrate cause, the petitioner must establish that some external and objective
24  factor impeded efforts to comply with the state's procedural rule.  *E.g., Murray v. Carrier*, 477
25  U.S. 478, 488 (1986); *Hivala v. Wood*, 195 F.3d 1098, 1105 (9th Cir. 1999).  To demonstrate
26  prejudice, he must show that the alleged error resulted in actual harm.  *E.g., Vickers v.
27  Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Both cause and prejudice must be established.
28  *Murray*, 477 U.S. at 494.

1      Petitioner urges that he can demonstrate cause to overcome the procedural default

2   because the state courts appointed trial counsel as appellate counsel over his objection and

3   denied him his purported right to self-representation on the direct appeal. #28, at 2-7.

4      Petitioner's argument is fundamentally flawed.  Petitioner *had* no right to represent

5   himself on a direct appeal as opposed to at trial.  *Martinez v. Court of Appeal of California*,

6   528 U.S. 152 (2000).  There was nothing improper constitutionally or otherwise in the state

7   court orders appointing trial counsel as appellate counsel and denying requests by petitioner

8   to present papers *pro se* on the represented appeal.   A represented defendant has no right

9   to have *pro se* filings considered because a criminal defendant has no constitutional right to

10  both self-representation and the assistance of counsel in the same proceeding.  *See, e.g.,*

11  *United States v. Bergman*, 813 F.2d 1027, 1030 (9th Cir.1987); *United States v. Halbert*, 640

12  F.2d 1000, 1009 (9th Cir.1981).  Petitioner had no more right to dictate who represented him

13  on direct appeal than he had a right, with regard to the claims in Ground 1, to dictate which

14  judge presided over his trial.

15      Petitioner further contends that he can demonstrate cause because appellate

16  counsel did not consult with petitioner and did not pursue the claims that he wanted to pursue

17  on appeal.  Green maintains that counsel had a conflict of interest and that there was an

18  irrevocable conflict between himself and counsel because counsel would not pursue the

19  claims that he wanted counsel to pursue.  Petitioner attaches with his reply a copy of a proper

20  person motion seeking to remove appellate counsel.  He alleged therein that trial counsel had

21  a conflict of interest because he actively assisted the prosecution in making a case against

22  him and did not seek the recusal of the trial judge. #28, at 2-3, 7 & 14-16.

23      Petitioner's argument again is flawed.  A defendant does not have a constitutional right

24  to have appointed appellate counsel present every nonfrivolous issue requested by the

25  defendant.  *See Jones v. Barnes*, 463 U.S. 745 (1983).  A conclusory allegation that counsel

26  had a conflict of interest because he allegedly assisted the prosecution in obtaining a

27  conviction provided no basis either for removal of counsel or for a demonstration of cause to

28  overcome a procedural default.  Counsel's failure to pursue claims that petitioner wanted to

1  pursue did not give rise to an irrevocable conflict demonstrating a basis for cause.  Clearly,

2  a failure to pursue a baseless appellate claim seeking the disqualification of the trial judge

3  does not provide a basis for cause.  Appellate counsel, again, was not required to raise the

4  claims that the lay Green wanted him to raise simply because Green wanted him to do so.

5  Petitioner additionally contends conclusorily that alleged ineffective assistance of

6  appellate counsel in failing to raise claims in the federal petition, including Ground 2,

7  establishes cause and prejudice to overcome the procedural default. #28, at 8.

8  However, a habeas petitioner may rely upon alleged ineffective assistance of appellate

9  counsel to establish cause and prejudice only if the ineffective assistance claim was properly

10  exhausted in the state courts as a separate and independent claim.  *See Murray v. Carrier*

11  477 U.S. 478, 488-89 (1986); *Park v. California*, 202 F.3d 1146, 1154-55 (9th Cir. 2000);

12  *Cockett v. Ray* 333 F.3d 938, 943 (9th Cir. 2003); *see also Edwards v. Carpenter*, 529 U.S.

13  446, 452-53 (2000).

14  It does not appear that petitioner properly exhausted a separate and independent claim

15  that he was denied effective assistance of appellate counsel for failing to raise the claim in

16  Ground 2 on direct appeal.  All of the separate and independent claims of ineffective

17  assistance addressed on the state post-conviction appeal pertained instead to ineffective

18  assistance of trial counsel and further to a failure by trial counsel to challenge underlying

19  alleged trial errors other than those in Ground 2.  See #23, Ex. 25.

20  Ground 2 therefore is procedurally defaulted.

21  ***Ground 3: Claim Redundant of Ground 1***

22  In Ground 3, petitioner again alleges that he was denied effective assistance of trial

23  counsel when counsel did not seek recusal of the trial judge for alleged bias and prejudice.

24  The only possible difference between Ground 1 and Ground 3 is that Green – perhaps –

25  refers to different prior adverse rulings by the trial judge as allegedly showing bias or

26  prejudice.  The additional allegations do not fundamentally distinguish Ground 3 from Ground

27  1 and/or the claim exhausted in the state courts.  Whether petitioner bases the underlying

28  claim of bias or prejudice on one set of rulings as opposed to another, the state supreme

court's rejection of the associated claim of ineffective assistance of trial counsel was neither contrary to nor an objectively unreasonable application of clearly established federal law. Petitioner can demonstrate neither deficient performance nor prejudice due to trial counsel's failure to pursue the baseless disqualification motion grounded in the flawed premise that prior adverse rulings by the judge demonstrated bias.  Everything that the Court stated as a basis for rejection of Ground 1 is fully applicable to Ground 3.

Ground 3 does not provide a basis for federal habeas relief.

**Ground 4: Prosecutorial Misconduct – Alleged Knowing Use of Perjured Testimony**

In Ground 4, petitioner alleges that he was denied rights to due process and a fair trial in violation of the Fourteenth Amendment because the prosecution allegedly knowingly used perjured testimony, including in connection with allegedly falsified documents and evidence.

The Court is not persuaded that the constitutional claim is unexhausted.  The state supreme court held that the corresponding substantive claim presented on state post-conviction review was procedurally barred under N.R.S. 34.810(1)(b) because the claim could have been raised on direct appeal but was not. #23, Ex. 25, at 3-4.  The Court's discussion regarding the application of the procedural default doctrine as to Ground 2, *supra*, is fully applicable to Ground 4 as well.  Petitioner did not exhaust a separate and independent claim of ineffective assistance of appellate counsel based upon a failure to raise Ground 4 on direct appeal.  All of the separate and independent claims of ineffective assistance addressed on the state post-conviction appeal pertained instead to ineffective assistance of trial counsel. See #23, Ex. 25.  Petitioner therefore may not establish cause and prejudice to overcome the procedural default of Ground 4 due to alleged ineffective assistance of appellate counsel. *E.g., Cockett, supra.*

Ground 4 therefore is procedurally defaulted.

**Ground 5: Alleged Brady Violation**

In Ground 5, petitioner alleges that he was denied rights to due process and a fair trial in violation of the Fourteenth Amendment when the prosecution failed to disclose favorable exculpatory and impeachment evidence.

The Court is not persuaded that the constitutional claim is unexhausted.  The state supreme court held that the corresponding substantive claim presented on state post-conviction review was procedurally barred under N.R.S. 34.810(1)(b) because the claim could have been raised on direct appeal but was not. #23, Ex. 25, at 3-4.  The Court's discussion regarding the application of the procedural default doctrine as to Ground 2, *supra*, is fully applicable to Ground 5 as well.  Petitioner did not exhaust a separate and independent claim of ineffective assistance of appellate counsel based upon a failure to raise Ground 5 on direct appeal.  All of the separate and independent claims of ineffective assistance addressed on the state post-conviction appeal pertained instead to ineffective assistance of trial counsel. See #23, Ex. 25.  Petitioner therefore may not establish cause and prejudice to overcome the procedural default of Ground 5 due to alleged ineffective assistance of appellate counsel. *E.g., Cockett, supra.*

Ground 5 therefore is procedurally defaulted.

### Ground 6: Alleged Judicial Bias

In Ground 6, petitioner alleges that he was denied rights to due process and a fair trial in violation of the Fourteenth Amendment because the trial judge allegedly was biased.

The Court is not persuaded that the constitutional claim is unexhausted.  The state supreme court held that the corresponding substantive claim presented on state post-conviction review was procedurally barred under N.R.S. 34.810(1)(b) because the claim could have been raised on direct appeal but was not. #23, Ex. 25, at 3-4.  The Court's discussion regarding the application of the procedural default doctrine as to Ground 2, *supra*, is fully applicable to Ground 6 as well.  Petitioner did not exhaust a separate and independent claim of ineffective assistance of appellate counsel based upon a failure to raise Ground 6 on direct appeal.  All of the separate and independent claims of ineffective assistance addressed on the state post-conviction appeal pertained instead to ineffective assistance of trial counsel. See #23, Ex. 25.  Petitioner therefore may not establish cause and prejudice to overcome the procedural default of Ground 6 due to alleged ineffective assistance of appellate counsel. *E.g., Cockett, supra.*

1    The Court further holds in the alternative that the claim is wholly without merit on its

2  face.  Petitioner bases his claim of judicial bias on allegations that the trial judge ruled against

3  him in prior cases and then refused to recuse himself after Green filed a proper person motion

4  for disqualification.  As discussed as to Ground 1, *supra*, and on an *arguendo de novo* review,

5  such circumstances clearly do not provide a basis for disqualification of a trial judge.

6    Ground 6 therefore is procedurally defaulted and otherwise in any event does not

7  provide a basis for federal habeas relief.

8    ***Ground 7(a): Effective Assistance – Alleged Failure to Investigate***

9    In Ground 7(a), petitioner alleges that he was denied effective assistance of trial

10  counsel due to his failure to investigate the case, alleging that counsel failed to: (1) discover

11  that the crime scene analyst did not document by photography or otherwise any cut, blood,

12  or weapon; (2) interview and subpoena medical records from the physician that the victim

13  claimed that he saw later; (3) discover that an April 28, 2008, report and photographs made

14  available on the eve of trial by the prosecution were manufactured and not authentic, due to

15  the absence of signatures; and (4) conduct any pretrial investigation into "the conceded lack

16  of medical evidence."

17    It does not appear that the claims in Ground 7(a) were exhausted on the state post-

18  conviction appeal.  However, on a *de novo* review, the Court concludes that the claims in

19  Ground 7(a) are subject to dismissal on the merits under 28 U.S.C. § 2254(b)(2) because it

20  is perfectly clear on the record presented that petitioner does not raise even a colorable

21  federal claim and that he has no chance of obtaining relief on these allegations.  *See Cassett*

22  *v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005); *see also Murray v. Schriro*, ___ F.3d ___,

23  2014 WL 998019, slip op., at *24 (9th Cir. Mar. 17, 2014)(basing determination on underlying

24  record evidence); *Runningeagle v. Ryan*, 686 F.3d 758, 777-80 & n.10 (9th Cir. 2012)(basing

25  determination upon extensive record review on claim of ineffective assistance of counsel).

26    As backdrop, the state supreme court summarized the trial evidence as follows:

27    Here, the jury heard testimony that the victim and another
      security officer encountered Green when responding to a report
28    of a male urinating on a car behind a stage. The victim told Green

1    that he would have to leave the property. When Green failed to
2    leave, the victim tapped him on the shoulder and said, "Come on,
     man. Let's just go for a walk." Green swung at the victim's neck
3    with his right hand, the security officers attempted to restrain him,
     and he ended up on the ground. Someone in the background
4    yelled that Green had a knife, the security officers observed a box
     cutter in Green's right hand, and they knocked it from Green's
5    hand.  The victim discovered that he was bleeding from the neck
     and observed that there was blood on Green's hand. After he was
6    restrained, Green told the victim's supervisor, "I merk people for
     fun" and that "he was trying to get the jugular." The supervisor
7    testified that "merk is a street term for murder." The jury was also
     shown a surveillance video recording of the incident, which
8    depicted Green swinging at the victim before the security officers
     attempted to restrain him.

9    #29, Ex. 19, at 2 (on direct appeal).

10        Petitioner has not demonstrated, nor sought to demonstrate, by clear and convincing

11   evidence to the contrary in the state court record that the state supreme court's summary of

12   the trial evidence was incorrect.  The state high court's summary of the evidence thus is

13   presumed to be correct.  *See, e.g., Sims v. Brown,* 425 F.3d 560, 563 n.1 (9th Cir. 2005).

14   This Court otherwise makes no factual finding or credibility determination as to the veracity

15   of any assertions of fact in the state court proceedings.

16        In Ground 7(a)(1), petitioner alleges that counsel was ineffective for failing to discover

17   that the crime scene analyst did not document by photography or otherwise any cut, blood,

18   or weapon.  Petitioner cannot demonstrate prejudice under *Strickland* on this claim even if the

19   Court were to make a highly dubious *arguendo* assumption that counsel "failed to discover"

20   an alleged negative – *i.e.,* that the crime scene analyst did not document any cut, blood or

21   weapon.  Multiple witnesses testified that they observed the cut, the bleeding, and/or the box

22   cutter.  The box cutter was recovered at the scene and was admitted in evidence at trial.  #23,

23   Ex. 6, at 27-37, 41-43, 49-52 & 55-65 (security officer Albert Miller, with corroboration in part

24   from the surveillance video); *id.*, at 72-73 & 76-78 (police officer Andrew Kershaw, regarding

25   observation of box cutter during the post-incident investigation); #23, Ex. 5, at 20-25 & 28-35

26   (eyewitness bystander Daniel Young); *id.*, at 39-49 & 54-57 (security supervisor Daryl Wade).

27   Even if defense counsel *arguendo* had put the crime scene analyst on the stand and

28   established that he or she purportedly did not "document by photography or otherwise" the

1   cut, the blood, or the box cutter, there would not have been a reasonable probability of a

2   different outcome at trial.  Petitioner could be convicted even in the alleged absence of any

3   such "documentation by photography or otherwise" by a crime scene analyst.[1]

4          In Ground 7(a)(2), petitioner alleges that counsel was ineffective for failing to interview

5   and subpoena medical records from the physician that the victim claimed that he saw later.

6          This bare allegation does not present a viable claim of ineffective assistance of

7   counsel.  Merely alleging that defense counsel did not take some step in isolation establishes

8   neither deficient performance nor resulting prejudice.  Again, multiple witnesses in addition

9   to the victim testified that he was cut and started bleeding during the incident.  See record

10  citations in the discussion of Ground 7(a)(1), *supra*.  Defense counsel in fact did establish

11  from the victim's own testimony that the injuries only were "a series of scrapes," that there

12  were "no gashes," and that no stitches were required.  #23, Ex. 6, at 58; see also *id.*, at 64-65

13  (regarding minimal scarring underneath the beard that the victim had at trial).  Moreover, a

14  photograph of the injury to the victim's neck after medical had cleaned up the cut was in

15  evidence for the jurors to see themselves directly. #23, Ex. 6, at 26-37.

16         Even more significantly, there was absolutely no element of the crime of battery with

17  the use of a deadly weapon that required the State to prove that the victim sustained bodily

18  injury to any particular degree of severity.  Rather, the State was required to prove only that

19  the weapon used was *readily capable* of inflicting substantial bodily injury.  A box cutter of

20  course possesses such a ready capability.  See, e.g., #23, Ex. 7, Jury Instruction No. 6.  The

21  State was not required to prove that the victim was harmed to any particular degree.  *Id.*, Jury

22  Instruction No. 7.

23  _____

24         [1]The Court has indulged a highly dubious *arguendo* assumption that a crime scene analyst in fact did
    not document or photograph such evidence.  In the cited record portions of the trial transcript, the box cutter

25  had been impounded and was introduced at trial.  The victim testified to his injury as reflected in a photograph
    from the evening in question.  The investigating patrol officer referred at trial to the crime scene analyst's

26  actions in recovering evidence such as the box cutter and photographs.  See #23, Ex. 6, at 76-77.  However,
    even if a crime scene analyst had not processed, documented and/or photographed such evidence, petitioner

27  nonetheless could be convicted solely upon the testimony of the eyewitnesses to the event.  The weapon
    used did not even have to be recovered and introduced in evidence for petitioner to have been convicted.

28  See *id.*, Ex. 7, Jury Instruction No. 7.

1    Green's bare allegation does not at all suggest why a competent defense attorney

2    would waste valuable time looking at medical records regarding followup care for an injury

3    where multiple witnesses testified to the attack and injury having occurred.  Nor does the bare

4    allegation suggest how there was a reasonable probability that pursuing such a time-wasting

5    fool's errand would have produced exculpatory evidence that reasonably likely would have

6    produced a different outcome at trial.  Counsel was not defending a civil personal injury

7    lawsuit.  He was defending against a charge of battery with the use of a deadly weapon.  The

8    victim's followup medical records reflecting particulars of his condition, or even the lack of

9    such particulars, thereafter had nothing to do with whether Green – as multiple witnesses

10   testified – committed a battery of the victim with a deadly weapon.

11   In Ground 7(a)(3), petitioner alleges that counsel was ineffective for failing to discover

12   that an April 28, 2008, report and photographs made available on the eve of trial by the

13   prosecution allegedly were manufactured and not authentic, due to the alleged absence of

14   signatures.  Petitioner raised a similar allegation in proper person at the beginning of the trial.

15   Defense counsel noted that had received a fax from the State the afternoon before of a one

16   page report from the Fremont Street Experience security department.  #23, Ex. 5, at 7.

17   Petitioner has presented nothing other than a bare allegation that this report and

18   photographs were falsified and not authentic.  An April 28, 2008, report was not introduced

19   in evidence at trial as a part of the actual evidence before the jury that convicted petitioner.

20   The only photographs introduced into evidence were of the area where the incident occurred,

21   of the injury to the victim's neck, and of Green himself.  #23, Ex. 6, at 34 & 36-38.  Petitioner

22   suggests in Ground 4 that the photograph of the injury to the victim's neck was not made by

23   the crime scene analyst and was doctored.  His focus on this photograph appears to follow

24   from his mistaken belief that the State had to prove the extent of the victim's injury in order

25   to obtain a conviction.  In any event, petitioner's bare allegation that the photograph was

26   doctored ultimately is based on nothing more than his own also bare and unsupported

27   allegation in Ground 4 that the victim was not cut.  Multiple witnesses testified to the contrary.

28   Even if the Court were to indulge in a highly dubious *arguendo* assumption that defense

-13-

counsel somehow provided deficient performance with respect to this claim, petitioner's bare allegation of falsification of evidence does not establish that there was a reasonable probability of a different outcome at trial in this regard.

In Ground 7(a)(4), petitioner alleges that counsel was ineffective for failing to conduct any pretrial investigation into "the conceded lack of medical evidence."   Of course, if it *arguendo* were conceded that there was an absence of medical evidence, then there was nothing that counsel needed to do in order to establish what was already conceded.  In any event, as discussed as to Ground 7(a)(2), counsel was not defending a civil personal injury lawsuit.  He was defending against a charge of battery with the use of a deadly weapon.  As noted previously, multiple witnesses testified to the presence of the box cutter, the cut, and the bleeding.  See record citations in the discussion of Ground 7(a)(1), *supra*.  It neither was deficient performance for counsel to fail to investigate medical evidence that allegedly was not there nor was there a reasonable probability that doing such investigation would have led to a different outcome at trial.

On *de novo* review, Ground 7(a) thus does not provide a basis for habeas relief.   It is perfectly clear on the record presented that petitioner does not raise even a colorable federal claim and that he has no chance of obtaining relief on any of the claims in Ground 7(a).

### Ground 7(b): Effective Assistance – Alleged Failure to Communicate

In Ground 7(b), petitioner alleges that he was denied effective assistance of trial counsel because counsel allegedly failed to timely meet with petitioner and discuss the defense to be presented at trial.

During a discussion at trial outside the presence of the jury, Green stated in proper person that defense counsel had not talked to him or visited him in jail. #23, Ex. 5, at 6 & 9. After defense counsel stated that he in fact had visited him, Green then changed his story and stated that counsel had not discussed defenses.  *Id.*, at 9.  Counsel responded:

> You wouldn't let me.  All you wanted to talk about was your Federal prosecution against me and everybody else involved in your case.

*Id.*  Green did not dispute counsel's response, saying: "Right.  I mean – –."  *Id.*  Green only

a short time before had stated to the trial judge that he had requested federal involvement in regards to his alleged judicial misconduct. *Id.*, at 8.

The state supreme court rejected the claim presented to it on the following basis:

> . . . [A]ppellant claimed that trial counsel was ineffective for failing to meet or communicate with him prior to trial. Appellant failed to demonstrate that he was prejudiced. Given the overwhelming evidence presented against appellant, including eyewitness testimony and appellant's own admission that he was trying to "get the jugular" of the victim, appellant failed to demonstrate a reasonable probability that the result of trial would have been different had trial counsel met with him more extensively. Therefore, the district court did not err in denying this claim.

#23, Ex. 25, at 2.

The state supreme court's rejection of this claim clearly was neither contrary to nor an objectively unreasonable application of *Strickland*. If petitioner had anything meaningful of substance to convey to trial counsel regarding the defense of his case, much less that reasonably probably would have changed the outcome at trial, it is not reflected in any of the papers that petitioner has presented to this Court. Moreover, following a review of the trial transcript herein, it is evident that petitioner received exceedingly competent representation by defense counsel. Petitioner was convicted because of the evidence against him, including his own words, not because of any deficiency by counsel. The state supreme court's rejection of the claim clearly was not an objectively unreasonable application of clearly established federal law.

To the extent that petitioner further bases the claim on defense counsel announcing ready for trial over his objection, petitioner clearly does not present a viable claim for relief on the record presented, whether on deferential or *de novo* review.

Ground 7(b) therefore does not provide a basis for federal habeas relief.

### Ground 8: Initial Appearance, Commitment Order, and Alleged Judicial Bias

In Ground 8, petitioner alleges that he was denied rights to due process and equal protection of the laws in violation of the Fourteenth Amendment because: (a) the state courts abused their discretion and had no jurisdiction because he allegedly was not brought before

-15-

1    a judicial officer within 96 hours; (b) the commitment order sending him to a state psychiatric

2    hospital was defective because there was no probable cause for the order, he had no

3    representation, and he had not appeared in the division that issued the order prior to the order

4    being issued; and (c) the state trial judge refused to recuse himself due to bias and prejudice

5    because he had presided over cases involving petitioner's "similar conduct" and allegedly had

6    knowledge of "disputed evidentiary facts."

7        Grounds 8(b) and (c) are to a large extent redundant of Grounds 2 and 6 respectively.

8    To the extent that the claims are redundant, the Court adopts its prior discussion.

9        The discussion below addresses any remaining claims in Grounds 8(a) through (c) are

10   that *arguendo* are not exhausted and are not procedurally defaulted.  As to such claims, on

11   a *de novo* review, the Court concludes that the claims are subject to dismissal on the merits

12   under 28 U.S.C. § 2254(b)(2) because it is perfectly clear on the record presented that

13   petitioner does not raise even a colorable federal claim and that he has no chance of

14   obtaining relief on these allegations.  *See Cassett, supra*.

15       At the outset, petitioner has no viable claim for relief under the Equal Protection Clause

16   as to any of these claims.  The Equal Protection Clause does not prohibit every dissimilar

17   treatment of allegedly similarly situated individuals.  A petitioner's allegation that he was

18   denied "equal protection of the law" by some alleged trial error in his particular case does not

19   state a claim for relief under the Equal Protection Clause separate and apart from any

20   constitutional provisions that apply to the alleged trial error in question.

21       Regarding Ground 8(a), an alleged abuse of discretion in and of itself does not give

22   rise to a due process violation.  Petitioner's bare formulaic allegation that an alleged failure

23   to timely bring him before a judicial officer deprived the state courts of jurisdiction does not

24   establish that he was subjected to a due process violation that precluded his ultimate

25   conviction.  Any *arguendo* alleged illegal arrest or detention, if such actually occurred, would

26   not have voided the subsequent conviction. *E.g., Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).

27   Moreover, any claim based upon an allegedly improperly lengthy detention following arrest

28   without an appearance before a judicial officer in truth would arise instead under the Fourth

1    Amendment and, as such, would not be cognizable on federal habeas review, under the rule
2    of *Stone v. Powell*, 428 U.S. 465 (1976).[2]

3         Regarding Ground 8(b), the state court record belies petitioner's allegation that he was
4    not represented at the time of the commitment proceeding.  See #23, Exhs. 2 & 3.  The same
5    record exhibits also belie his allegation of a lack of a basis for the order, as the order followed
6    upon the court's consideration of the reports of two mental health professionals.  The two
7    providers found Green competent, but they also stated that he suffered from schizophrenia,
8    had a history of head trauma, and was not compliant in taking his medication.  The court
9    considered the reports and concluded that further evaluation, observation, and treatment was
10   warranted to reliably establish competency.  See *id.*, Ex. 2.  Any question regarding which
11   division of the state district court should have issued the commitment order would present –
12   at the very level best – a claim only of state law error.  Petitioner's underlying supposition that
13   any *arguendo* error in regard to any of the errors alleged in Ground 8(b) would have voided
14   his subsequent trial and conviction under the due process clause is unfounded.

15        Regarding Ground 8(c), a bare allegation that a trial judge knew "disputed evidentiary
16   facts" from "cases involving defendant's similar conduct" fails to state a basis for
17   disqualification, and most certainly does not do so as a matter of due process.  The jury, not
18   the judge, decides guilt or innocence.  Merely because a judge allegedly presided over trials
19   in other cases alleging similar offenses against petitioner provided absolutely no basis for
20   disqualification.  Green identifies no specific knowledge from one case that would require
21   recusal of the trial judge in the other.

22        Ground 8 therefore does not provide a basis for federal habeas relief.

23

24        [2]The Court notes that petitioner has made allegations of specific fact on collateral review that were
     belied by the justice court minutes.  See #23, Ex. 25, at 2 (false allegation that defense counsel waived the
25   preliminary hearing without petitioner's consent when the justice court minutes instead reflected that a
     preliminary hearing was held with Green present).  The claim as alleged in any event does not present a
26   viable basis for federal habeas relief, for the reasons stated in the text.

27        In a comparable situation in future, counsel should file with the state court record exhibits a copy of,
     at the very least, the complete justice court minutes reflecting when the probable cause determination was
28   made.

***Ground 9: Effective Assistance – Sundry Claims***

In Ground 9, petitioner alleges that he was denied effective assistance of trial counsel because defense counsel allegedly failed to: (a) challenge the alleged failure to bring petitioner before a judicial officer for a probable cause determination until four days after his arrest; (b) challenge the commitment order because Green allegedly had no representation prior to the order and had not previously appeared in the division of the state district court that issued the order; (c) file a motion to dismiss based upon his allegedly being improperly committed without counsel and without due process; (d) file a motion to suppress all evidence gathered while he was committed, *"i.e.,"* the allegedly manufactured April 28, 2008, report by Fremont Street Experience security discussed in Ground 7(a)(3); and (e) file a "motion to participate in any discovery" so that counsel could determine that the case allegedly was deficient of evidence because there was no medical evidence to support the victim's claim.

It does not appear that the claims in Ground 9 are exhausted, at least in the manner presented therein.  On a *de novo* review, the Court concludes that the claims are subject to dismissal on the merits under 28 U.S.C. § 2254(b)(2) because it is perfectly clear on the record presented that petitioner does not raise even a colorable federal claim and that he has no chance of obtaining relief on these allegations.  *See Cassett, supra*.

With regard to Ground 9(a), as discussed as to Ground 8(a), a bare allegation that counsel failed to raise an issue regarding Green, allegedly, being detained for four days prior to seeing a judicial officer does establish a reasonable probability that counsel thereby would have been able to either bar or void his conviction as a result.  *See Gerstein*, 420 U.S. at 119.

With regard to Grounds 9(b) and 9(c), as discussed as to Ground 8(b), petitioner's allegation that he was not represented at the commitment hearing is belied by the record. Petitioner's further bare allegation that he had not appeared previously in the division of the state district court that issued the commitment order does not tend to establish a reasonable probability that counsel thereby would have been able to prevent or void his subsequent trial and conviction on this basis.  Petitioner's suggestion that he for some reason had to appear in the division previously for the order to be valid would appear to be frivolous on its face.

-18-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

With regard to Ground 9(d), the observations above as to Grounds 9(b) and 9(c) apply fully to this claim as well.  Moreover, as discussed with regard to Ground 7(a)(3), there was nothing or at the very least nothing of substance to suppress at trial vis-à-vis an April 28, 2008, report from Fremont Street Experience security.  Even if the Court were to indulge an extremely dubious *arguendo* assumption that counsel would have been able to pursue a successful motion to suppress in this regard, there was not even a remote possibility, much less a reasonable probability, of such an *arguendo* successful (albeit in truth likely frivolous) motion leading to a different outcome at petitioner's trial.

With regard to Ground 9(e), it is evident from the trial transcript that defense counsel was fully conversant with the State's case – quite likely through informal reciprocal open file review – in what was an extraordinarily simple criminal case.  In any event, petitioner's general allegation that some yet further action by counsel would have led to a discovery that the State's case was "deficient of evidence" simply is wrong.  Petitioner's conviction of battery with the use of a deadly weapon was amply supported by evidence, from multiple witnesses.  See text, *supra*, at 11-14.  Petitioner's particular allegation that the State's evidence was deficient because there was no medical evidence to support the victim's claim simply is nonsensical.  As discussed at length with regard to Grounds 7(a)(2) and 7(a)(4), the State was not required to prove the extent of the victim's injuries to convict Green.  Petitioner was not convicted of or sentenced for a battery with substantial bodily harm but was convicted instead of only battery with the use of a deadly weapon.  Green confuses the steps required for defense of a civil personal injury claim with those necessary instead to defend the criminal charge brought against him.

On *de novo* review, Ground 9 thus does not provide a basis for habeas relief.   It is perfectly clear on the record presented that petitioner does not raise even a colorable federal claim and that he has no chance of obtaining relief on any of the claims in Ground 9.

### *Consideration of Possible Issuance of a Certificate of Appealability*

Under Rule 11 of the Rules Governing Section 2254 Cases, the Court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to petitioner.

As to the claims rejected by on the merits, under 28 U.S.C. § 2253(c), a petitioner must make a "substantial showing of the denial of a constitutional right" in order to obtain a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Hiivala v. Wood*, 195 F.3d 1098, 1104 (9th Cir. 1999).   To satisfy this standard, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." *Slack*, 529 U.S. at 484.

As to claims rejected on procedural grounds, the petitioner must show: (1) that jurists of reason would find it debatable whether the petition stated a valid claim of a denial of a constitutional right; and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.  While both showings must be made to obtain a COA, "a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments."   529 U.S. at 485.  Where a plain procedural bar is properly invoked, an appeal is not warranted.  529 U.S. at 484.

The Court will deny a COA as to all claims.  Jurists of reason would not find debatable or wrong the denial of:

(a)	Ground 1 on the merits on deferential review (**see text, *supra*, at 3-5**);

(b)	Grounds 2, 4, and 5 as procedurally defaulted (**see text, *supra*, at 5-7 and 8-9**);

(c)	Ground 3 as redundant of Ground 1 (**see text, *supra*, at 7-8**);

(d)	Ground 6 both as procedurally defaulted and in the alternative on the merits on *de novo* review (**see text, *supra*, at 9-10**);

(e)	Ground 7(a) on the merits on *de novo* review because petitioner does not raise even colorable federal claims (**see text, *supra*, at 10-14**);

(f)	Ground 7(b) on the merits principally on deferential review (**see text, *supra*, at 14-15**);

(g)	Ground 8 on the merits on *de novo* review because petitioner does not raise even colorable federal claims, to the extent that the claims therein

are not redundant of procedurally defaulted claims in Grounds 2 and 6 (**see text, *supra*, at 15-17)**; and

(h)   Ground 9 on the merits on *de novo* review because petitioner does not raise even colorable federal claims (**see text, *supra*, at 18-19**).

To the extent that claims were rejected herein in whole or in part because of petitioner's failure to present sufficiently specific allegations of actual fact, petitioner previously was advised of the specificity requirement for federal habeas pleading and was afforded an opportunity to amend. See #11. The Court finds that allowance of further opportunity to amend would be futile, particularly given the extent to which the claims presented after the filing of multiple pleadings herein are grounded on fundamentally flawed premises.

IT THEREFORE IS ORDERED that respondents' motion (#22) to dismiss is GRANTED IN PART and DENIED IN PART as per the remaining provisions below, with the motion being denied in part only as to particular subsidiary alternative bases for dismissal.

IT FURTHER IS ORDERED that all claims in the petition, as amended, are DENIED and that this action shall be DISMISSED with prejudice, with: (a) Grounds 1, 7, and 9 being denied on the merits; (b) Grounds 2, 4, and 5 being denied on the basis of procedural default; (c) Ground 3 being denied as redundant of Ground 1; (d) Ground 6 being denied as procedurally defaulted and in the alternative on the merits; and (e) Ground 8 being denied on the merits to the extent that the claims therein are not redundant of procedurally defaulted claims in Grounds 2 and 6.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED as to all grounds. **See text, *supra*, at 20-21.**

IT FURTHER IS ORDERED that petitioner's motion (#27) for an extension of time is GRANTED *nunc pro tunc*, to the extent that petitioner seeks to have his March 17, 2014, response (#28) considered.

/ / / /

/ / / /

/ / / /

1      The Clerk of Court shall enter final judgment accordingly in favor of respondents and

2  against petitioner, dismissing this action with prejudice.

3          DATED: March 31, 2014

4

5

6          HOWARD D. MCKIBBEN
           United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28